IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN BARNARD,                                            CV. 05-68-KI

                  Plaintiff,

    v.                                                    OPINION AND ORDER

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

KING, Judge

      Plaintiff Kathleen Barnard brings this action pursuant to section 405(g) of the Social

Security Act to obtain judicial review of a final decision of the Commissioner denying her

application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

      Plaintiff filed an application for DIB on March 25, 1997.  The application was denied

initially and upon reconsideration.  After a timely request for a hearing, plaintiff appeared before

an Administrative Law Judge ("ALJ").  On September 18, 1999, the ALJ issued a decision

finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to

Page 1 - OPINION AND ORDER

benefits.  This decision became the final decision of the Commissioner when the Appeals

Council declined to review the decision of the ALJ on May 25, 2001.  Plaintiff requested judicial

review.  Following submission of plaintiff's opening brief, the parties stipulated to remand the

case for further administrative proceedings.  By Order dated February 22, 2002, the matter was

reversed and remanded pursuant to the parties' stipulation.

Following a remand hearing, the ALJ issued a decision on March 24, 2004 again finding

that plaintiff was not disabled within the meaning of the Act and therefore not entitled to

benefits.  On November 17, 2004, the Appeals Council declined to review the decision of the

ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have

contributed to the Social Security program and who suffer from a physical or mental disability.

42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits ("SSI")

may be available to individuals who are age 65 or over, blind, or disabled, but who do not have

insured status under the Act.  42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant.  Gomez v. Chater,

74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966

F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an

inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to cause death or to last for a continuous

period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual

will be determined to be disabled only if his physical or mental impairments are of such severity

Page 2 - OPINION AND ORDER

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

　　　If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts

to the Commissioner to show what gainful work activities are within the claimant's capabilities.

Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI).  The

claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R.

§§ 404.1520(f) and 416.920(f).

　　　When an individual seeks either DIB or SSI because of disability, judicial review of the

Commissioner's decision is guided by the same standards.  42 U.S.C. §§ 405(g) and 1383(c)(3).

This court must review the case to see if the decision of the Commissioner is supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a

reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d

715, 720 (9th Cir. 1998).  It is more than a scintilla, but less than a preponderance, of the

evidence.  Id.

　　　Even if the Commissioner's decision is supported by substantial evidence, it must be set

aside if the proper legal standards were not applied in weighing the evidence and in making the

decision.  Id.  The court must weigh both the evidence that supports and detracts from the

Commissioner's decision.  Id.  The trier of fact, and not the reviewing court, must resolve

conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the Commissioner.  Id. at 720-21.

## FACTS

I.    Barnard's History

Plaintiff, born in 1942, alleges disability beginning December 18, 1995, due to degenerative disc disease and back, hip, leg, neck, and left arm problems.  Her date last insured is March 31, 1998.  Plaintiff graduated from high school.  She has worked as a floral designer, women's clothing sales clerk, post office clerk, school bus driver, school night watchman, and secretary.

Prior to her December 18, 1995 alleged onset date, plaintiff experienced two injuries.  In 1979 she fell and injured her back, causing a small disc herniation on her lumbosacral spine.  In October 1981, Workers Compensation examiners concluded her condition was permanent and stationary, and limited her to sedentary level work.  At that time, plaintiff retrained as a floral designer.  From 1980 until 1991, plaintiff complained of back pain that radiated down her legs.  During this time, plaintiff worked at several light level jobs.

Plaintiff's second orthopedic injury occurred in April of 1991, after she began working part-time as a school bus driver.  When she was mopping out the bus, she injured her left shoulder, upper back and left arm.  Ronald Hartmann, M.D. diagnosed plaintiff with bursitis, a sprain, and myositis (another term for fibromyalgia).  Allen Brooks, M.D. examined plaintiff in April of 1992, at which time he stated, "Frankly I have some difficulty understanding her current symptoms in relationship to her injury.  It is difficult to understand how she remains as symptomatic as she does a year following what appears to have been a fairly minor incident.  Nevertheless, from a neurological standpoint I could detect no abnormalities suggesting we should pursue a neurological work-up further."  Tr. 264-65.  That same month, Workers

Compensation found plaintiff to be capable of medium level work, with restrictions from repetitive reaching, pushing/pulling, and lifting.

In November of 1992, Robert Steele, M.D. opined that plaintiff is "certainly significantly limited," but two arthrograms came back normal. Thomas Corsolini, M.D. diagnosed plaintiff with fibromyalgia and a rotator cuff strain in December 1992, after plaintiff complained of pain in her upper back and neck, as well as her left shoulder. In March of 1993, Dr. Corsolini, in his closing examination of plaintiff, opined:

> I think that she would be able to return to her previous job with the Sweet Home School District. I realize this may cause friction when she is notified of this due to her apparent weakness in the left arm. However, I can't find an objective reason why her arm should be so weak and I feel that the rotator cuff tendinitis . . . has resolved and is not causing significant limitation to use of her arm and shoulder at this time. She does have fibromyalgia which is a condition of soreness diffusely in many muscles in the body, however, I don't consider this to be work related and I feel that it has produced or is associated with a condition of dependency or disability in which Mrs. Barnard either cannot or will not do what she is fully capable of. I don't think the worker's compensation system is responsible for this type of disability.

Tr. 273.

After more than a two year gap in medical visits, in 1996 Rick Salisbury, M.D. confirmed the diagnosis of fibromyalgia, and saw her after she experienced back pain after lifting clothes out of her washing machine. At the request of social security, Dean Sukin, M.D. evaluated plaintiff, attributing plaintiff's decreased range of motion to be due in part to plaintiff's unwillingness to put forth the necessary effort. He opined that fibromyalgia was probably the reason for plaintiff's neck pain.

In December of 1998, Kimberly Goslin, M.D., Ph.D., evaluated plaintiff and performed an MRI. She opined that:

Page 6 - OPINION AND ORDER

> [T]he examinations show significant abnormalities at the C6-C7 and T12-L1
> levels which can certainly explain many of her complaints.  Unfortunately, I have
> not yet completed my evaluation and thus cannot make recommendations
> regarding long-term disability.  She is currently fully disabled by her pain, which
> clearly has an underlying cause.  She is unable to walk for even brief distances.  I
> will be evaluating her further in the future, but would recommend full disability at
> this time.

Tr. 322.

The ALJ sent Dr. Goslin a complete copy of plaintiff's file in January of 1999 asking for

assistance in understanding how plaintiff's complaints about excruciating pain were supported

by medical evidence.  Dr. Goslin responded in relevant part as follows:

> The pain is localized to her neck, radiating down the arms, thorax, and low back,
> and radiating into her legs.  Her examination was grossly normal, though limited
> because of her complaints of pain.  Her EMG test was normal.  Her MRI's
> showed significant abnormalities in the cervical [spine], consistent with her
> symptoms, but her lumbosacral MRI did not show any significant abnormalities.
> I believe that the most significant component of Ms. Barnard's low back and leg
> pain is musculoskeletal and perhaps related to her fibromyalgia.

Tr. 330.

On December 2, 2003, plaintiff underwent surgery on her neck, an anterior cervical

discectomy and fusion at C5-6.

Plaintiff began seeing a psychiatrist in the fall of 2003.  Lila McQueen, Ph.D. diagnosed

plaintiff with major depressive disorder, post-traumatic stress disorder, and a pain disorder

associated with psychological factors and medical condition.

II.    The ALJ's Decision

The ALJ found that plaintiff had physical and psychological impairments considered

severe within the meaning of 20 C.F.R. § 404.1520(b).  Specifically, he found that she suffered

from fibromyalgia and status post left rotator cuff strain in 1991 (resolved in 1992).

Page 7 - OPINION AND ORDER

The ALJ determined that plaintiff could perform light work.  As such, the ALJ found that plaintiff was limited to lifting a maximum of twenty pounds and frequent lifting of no more than ten pounds, that she was capable of standing or sitting, but that she was precluded from working at unprotected elevations or near dangerous moving machinery due to her complaints of vertigo.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Barnard could return to her past relevant work as a floral designer, dress shop sales clerk, school night watchman/security guard, and general clerk. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

The transcript from the first hearing reflects that the ALJ struggled with this decision; at one point, the ALJ stated, "I'm really at kind of a loss right now quite frankly as to what to do.  I need more time to sit down and think about all of this."  Tr. 67.

## DISCUSSION

I.    <u>Severity of Other Impairments, Duty to Develop the Record and Determine Onset Date</u>

Plaintiff asserts that the ALJ erred in failing to consider that her degenerative disc disease and obesity are severe impairments.  The Commissioner responds that the record does not support a finding of disability as to either of these alleged impairments.  In addition, plaintiff contends that the ALJ erred in failing to develop the record with regard to plaintiff's psychological conditions.  Plaintiff also argues the ALJ erred in neglecting to consider the onset dates of plaintiff's disabilities.  The Commissioner responds that there was no need to develop the record as to plaintiff's psychological conditions, and there was no need to establish an onset date since plaintiff failed to establish that she was disabled.

A.    Disc Disease

It is plaintiff's burden to establish that she suffers from a "disability" under the Act, which is defined in part to be a "medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  In addition, plaintiff bears the burden of proving that she suffered from the disability "prior to the date upon which her disability insured status expire[d]."  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

With regard to plaintiff's claim that she suffers from degenerative disc disease, plaintiff points to a 1981 diagnosis of "herniated discogenic disc disease L5-S1," Tr. 215, and an interpretation of a 2003 MRI identifying "mild spinal stenosis" in the thoracic area of her spine, and a disc protusion in the lumbar spine "without definite mass effect."  Tr. 430.  The 1981 diagnosis appears to be an anomaly as no other physician or laboratory finding confirms it, and in any event the diagnosis occurred fourteen years before the relevant coverage period.  The 2003 findings do not demonstrate that plaintiff suffered from a severe impairment in her thoracic or lumbar spine.  Indeed, even Dr. Goslin opined in 1998 that plaintiff's lumbosacral MRI "did not show any significant abnormalities."  Tr. 330.  Accordingly, the ALJ did not err in failing to consider disc disease in the thoracic or lumbar spines as severe impairments during the period in question.

Page 9 - OPINION AND ORDER

Despite the Commissioner's argument to the contrary, however, there is evidence that plaintiff was diagnosed with an impairment in the cervical area of her spine (her neck), and that laboratory findings confirm it. The results from the MRI of December 1998, just nine months after the end of plaintiff's date last insured, showed degenerative changes, disc bulges, and mild osteophyte formations in the area of her cervical spine. Tr. 322. Plaintiff finally underwent surgery on the affected area in 2003. In the Ninth Circuit, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

Since this evidence of plaintiff's disc disease occurred after the expiration of her date last insured, the question becomes whether the ALJ erred in failing to determine the onset date of the disability. Dr. Sukin evaluated plaintiff's neck in the middle of the relevant period, May 20, 1997, and opined as follows:

> The patient's neck examination showed no evidence of radiculopathy, herniated disks. Her pain does appear to be mechanical in nature. I think with her diagnoses of fibromyalgia this is the most likely explanation of the pain that she is having in her neck at this point in time. Without plain x-rays, however, a complete examination has not been performed of the neck. I do not feel any other imaging studies of the neck need to be done at this point in time, however.

Tr. 285. Regardless of what events occurred after the evaluation to prove Dr. Sukin wrong, the ALJ did not err in relying on this medical evidence. There is no contradictory medical evidence that plaintiff was suffering specifically from cervical disc disease during the insured status. The ALJ could properly attribute plaintiff's neck pain during this time to fibromyalgia based on this evidence. Furthermore, the significant date for disability determination is the date of onset of the *disability*, rather than the date of *diagnosis*. See Morgan v. Sullivan, 945 F.2d 1079, 1080-81 (9th Cir. 1991). The ALJ accepted that plaintiff experienced "diffuse aches and pains, whether

musculoskeletal or of other etiology, [which] precluded the performance of strenuous work activity" and limited her to light work. Accordingly, the ALJ did not err in failing to consider plaintiff's cervical disc problems to be a severe impairment necessitating a closer look at the onset date.

        B.    <u>Obesity</u>

Plaintiff claims her obesity is a severe impairment. No mention of obesity as an impairment was made in the application for disability or at the hearing. Clinical notes and medical records do report plaintiff's body weight, and Dr. Sukin described her as "an obese white female." Tr. 284. The record reflects that she has consistently weighed around 190 pounds, with a height of 5'5". Tr. 133, 219, 299, 324.

However, the record does not indicate that plaintiff's obesity exacerbated her symptoms. Although plaintiff argues that her obesity affected "her ability to sit, stand and walk for prolonged periods," there is no evidence in the record that any of her doctors associated her obesity with any of these limitations. As the Ninth Circuit in <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005) pointed out, Social Security Ruling 02-01p states:

> [An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairments. [The ALJ] will evaluate each case *based on the information in the case record.*

(emphasis added). Indeed, Dr. Sukin found plaintiff's gait to be normal during the relevant period in question, despite his assessment that she is "an obese white female." Tr. 284. Without evidence in the record that would have alerted the ALJ to any limiting effects of plaintiff's weight, or without evidence that plaintiff was so obese such that the ALJ should have been put

on notice, the ALJ's failure to discuss its impact is not error.

      C.     <u>Psychological Impairments</u>

      Plaintiff complains that the ALJ should have developed the record with regard to plaintiff's psychological status, including determining an onset date.  The Commissioner responds that the ALJ had no duty to develop the record because plaintiff was not diagnosed with any mental disorder during the relevant period, and plaintiff did not allege a mental disorder.

      According to plaintiff "[n]umerous sources pre-dating Plaintiff's date last insured commented on Plaintiff's depression, and Plaintiff repeatedly reported cognitive decline and difficulty with memory."  Plaintiff's Opening Brief at 18.  Plaintiff does not provide any citations to the record.  Dr. McQueen diagnosed plaintiff with major depressive disorder, PTSD, and a pain disorder with psychological factors and medical condition, in the fall of 2003, five years after the expiration of plaintiff's date last insured.

      I agree with the Commissioner.  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).  Having reviewed the medical record during the time in question, plaintiff never mentions depression or other psychological impairments to either Dr. Sukin or Dr. Salisbury, and neither diagnose her with those problems or refer her to another physician or psychiatrist for evaluation.  Dr. McQueen's diagnoses came five years after the end of the period in question.

      The ALJ also noted that plaintiff's earlier sessions with Dr. McQueen dealt with family issues unrelated to impairments, and the later sessions dealt with plaintiff's anxiety about

surgery.  None of the issues raised by plaintiff in these sessions would indicate to the ALJ that plaintiff may have had a psychological impairment during the relevant years in question, and since neither of her physicians noted any problems, the ALJ did not err in failing to develop the record with regard to plaintiff's psychological issues.

The same holds true in determining whether the ALJ erred in failing to call upon a medical expert to determine the onset date of plaintiff's psychological impairments.  It was not necessary for the ALJ to call upon a medical expert when nothing in the medical record during the period in question pointed to plaintiff's experiencing psychological problems.  Therefore, the ALJ made no error in failing to consider plaintiff's psychological problems as a severe mental impairment constituting a "disability" under the Act.

II.    Listing Determination

Barnard complains that the ALJ failed to consider all of her impairments, singly and in combination, in determining that her impairments did not meet or equal the listings.  Specifically, plaintiff asserts that the ALJ did not consider her degenerative disc disease, her obesity, her fatigue, or her mental impairment.  The Commissioner responds that plaintiff's argument fails for vagueness.

The listings set out at 20 CFR pt. 404, subpt. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990).  For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria.  Id. at 530.  Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in

severity to all the criteria for the one most similar listed impairment.  Id. at 531.  Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment."  20 C.F.R. § 404.1526.  If a claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded benefits without a determination whether she can actually perform prior work or other work.  Sullivan, 493 U.S. at 532.

Barnard bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.  Burch, 400 F.3d at 683.  Plaintiff does not identify the listings that are implicated by her impairments.  In addition, I have already determined that the ALJ did not err in failing to consider the effect of plaintiff's disc disease, obesity and medical impairments on her ability to work.  As the ALJ pointed out, "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment."  Tr. 351.  As for her fatigue, since I have upheld the ALJ's evaluation of plaintiff's credibility below, the ALJ did not err in failing to consider any fatigue plaintiff may have experienced.

III.    Medical Evidence

Plaintiff asserts that the Commissioner failed to give clear and convincing reasons for rejecting Dr. Goslin's opinion that plaintiff is disabled.  The Commissioner responds that the ALJ appropriately decided not to give controlling weight to Dr. Goslin's opinion that plaintiff is disabled because Dr. Goslin's treatment notes were inconsistent, she relied too heavily on plaintiff's subjective complaints, and testing results did not support her conclusion.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831.

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted).

The ALJ did not give Dr. Goslin's medical report controlling weight. However, he came to this conclusion for a variety of reasons and not solely on the basis that it occurred after the expiration of plaintiff's last insured date, as plaintiff alleges. Instead, the ALJ rejected Dr. Goslin's opinion as being internally inconsistent, unsupported by the objective medical evidence, and too reliant on plaintiff's complaints.

The ALJ properly pointed out that Dr. Goslin somewhat inconsistently opined that plaintiff is "currently fully disabled by her pain, which clearly has an underlying cause" when she had "not yet completed" her evaluation with respect to long-term disability . Although

plaintiff is correct that this criticism does not address the fact that Dr. Goslin subsequently

offered a second disability opinion, contained in a letter to the ALJ of February 2, 1999, it does

tend to undermine the reliability of that second opinion since it implies Dr. Goslin was prepared

to issue a finding of disability when she had not completed her review.

The ALJ also properly rejected Dr. Goslin's opinion on the basis that it is unsupported by

the record and objective findings.  Dr. Goslin first opined that the MRIs showed "significant

abnormalities at the C6-C7 and T12-L1 levels which can certainly explain many of her

complaints" and went on to conclude that plaintiff is currently fully disabled, implying that the

level of plaintiff's disability is demonstrated by plaintiff's inability to walk for even brief

distances.  Tr. 322.  In her letter to the ALJ, however, she clarified that the lumbosacral MRI did

not show any significant abnormalities, and attributed plaintiff's inability to walk to

fibromyalgia.  She acknowledged in this letter that plaintiff's examination was normal, as was

the EMG.  Furthermore, she stated that an expert on fibromyalgia may be useful.

Plaintiff suggests that when Dr. Goslin opined that there were "significant abnormalities

at the T12-L1 levels," she was relying on the results of plaintiff's examination, as opposed to the

MRIs.  However, it is just as likely that Dr. Goslin was referring to the MRIs, particularly in

light of Dr. Goslin's later description of plaintiff's examination as "grossly normal, though

limited because of her complaints of pain."  Tr. 330.  The ALJ did not err in reading Dr. Goslin's

findings with regard to plaintiff's alleged walking limitation as being inconsistent.

The ALJ also found that Dr. Goslin relied too heavily on plaintiff's complaints in coming

to her opinion about disability.  Indeed, Dr. Goslin came to her conclusion that plaintiff is

"currently disabled" after only one visit.  The MRI results were not compatible with an inability

to walk, and if this limitation were simply due to fibromyalgia as Dr. Goslin suggested, it is
noteworthy that plaintiff did not complain to either Dr. Sukin or Dr. Salisbury of an inability to
walk more than a few feet.

Finally, it is well-accepted that a physician's opinion as to disability is not entitled to any
significant weight.  SSR 96-5p.  It is the ALJ who must evaluate the evidence and come to this
conclusion.

The ALJ provided clear and convincing reasons supported by substantial evidence for
finding that Dr. Goslin's opinion was not entitled to controlling weight.  He considered her
opinion with regard to the existence of plaintiff's fibromyalgia.

Plaintiff also argues that the ALJ improperly failed to consider a 1991 opinion of Dr.
Fitchett who opined that plaintiff needed to avoid repetitive reaching, pulling, pushing, and
lifting, and a 1984 opinion of Dr. Rolston that plaintiff was limited to semi-sedentary work
activity.  The ALJ need only discuss probative evidence.  Vincent v. Heckler, 739 F.2d 1393,
1394-95 (9th Cir. 1984).  Plaintiff returned to sedentary, light and medium level work after Dr.
Rolston's opinion, and the injury necessitating the 1991 limitations was later deemed resolved by
Dr. Corsolini.  The ALJ did not err in failing to discuss this evidence.

IV.    Credibility Determination

Barnard contends that the ALJ improperly rejected her testimony.  The Commissioner
argues that the ALJ's credibility assessment is supported by substantial evidence, noting that
objective medical evidence undermined plaintiff's credibility, that she failed to give maximum or
consistent effort on examinations, and had a tendency to exaggerate her symptoms.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen, 80 F.3d at 1281-82.  The claimant is not required to produce objective medical evidence

of the symptom itself, the severity of the symptom, or the causal relationship between the

medically determinable impairment and the symptom.  The claimant is also not required to show

that the impairment could reasonably be expected to cause the severity of the symptom, but only

to show that it could reasonably have caused some degree of the symptom.  Id. at 1282.

        In the second stage of the analysis, the ALJ must assess the credibility of the claimant's

testimony regarding the severity of the symptoms.  If there is no affirmative evidence of

malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific

findings stating clear and convincing reasons for the rejection, including which testimony is not

credible and what facts in the record lead to that conclusion.  Id. at 1284.  Clear and convincing

reasons for discrediting a claimant's testimony include consideration of inconsistencies between

testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment

or to follow prescribed treatment, and reports to physicians.  20 C.F.R. 404.1529; see also,

Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

        Plaintiff produced medical evidence of underlying impairments consistent with her

complaints and there is no evidence that she is malingering.  Therefore, the ALJ must provide

clear and convincing reasons for rejecting Barnard's testimony.

        The ALJ found plaintiff's claims as to her "impairments and the extent of their impact on

her ability to work," Tr. 351, not entirely credible.  First, the ALJ listed examples evidencing

plaintiff's tendency to exaggerate her symptoms. Plaintiff continued to complain about shoulder

pain when Dr. Corsolini deemed the rotator cuff tendinitis "resolved" in 1992. Although Dr.

Corsolini's comment was directed only at plaintiff's rotator cuff tendinitis, the comment together

with the fact that "objective studies did not corroborate such impairment," Tr. 354, as noted by

the ALJ, undermined plaintiff's credibility. It is also irrelevant that Dr. Corsolini made these

comments over two years from plaintiff's allegations of disability, and in the context of

evaluating a worker's compensation claim. The comments reflect not on Dr. Corsolini's

diagnosis, but rather on plaintiff's credibility.

The ALJ also relied on Dr. Corsolini's statement that plaintiff's fibromyalgia created "a

condition of dependency or disability in which Mrs. Barnard either cannot or will not do what

she is fully capable of." Tr. 273. Although plaintiff is correct that Dr. Corsolini crafted this

statement in the disjunctive, it was not error for the ALJ to rely on the statement as connoting

that plaintiff is capable of doing more.[1] The statement implies that Dr. Corsolini also believed

plaintiff exaggerated her symptoms.

The ALJ also relied on Dr. Sukin's impressions of plaintiff, specifically that he noted a

consistent lack of effort, that plaintiff felt "excruciating" pain after a light touch, and that

plaintiff's purported vertigo made no medical sense. Failure "to give maximum or consistent

effort" during a physical capacity evaluation is compelling evidence of a lack of credibility.

Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff argues that any lack of effort

was a result of the pain she experienced. Although that may be plaintiff's explanation now, Dr.

---

[1]I disagree with the Commissioner's statement that Dr. Corsolini opined plaintiff could
work despite her fibromyalgia. This is neither an accurate reflection of Dr. Corsolini's
conclusion, nor is it reflected as such in the ALJ's opinion.

Sukin did not opine that the examination was difficult due to plaintiff experiencing pain as a result of some identifiable source.  Dr. Sukin opined that plaintiff's examination was difficult "due to what is felt to be lack of effort" and the ALJ is entitled to rely on Dr. Sukin's observations in determining whether plaintiff's complaints are credible.

Similarly, although plaintiff now states that hypersensitivity to touch is a symptom of fibromyalgia, that was not a symptom identified by Dr. Sukin.  The ALJ did not err in reading hypersensitivity to pain as plaintiff's exaggeration of symptoms.  Finally, the ALJ did not err in relying on Dr. Sukin's comment that vertigo does not make medical sense.  If Dr. Sukin thought the symptom was related to fibromyalgia, as plaintiff asserts, he would have said so.  Plaintiff does not point to any evidence in the medical record in which any physician opined that hypersensitivity and vertigo are symptoms of fibromyalgia.

Finally, plaintiff argues the ALJ erred in failing to address plaintiff's disabling fatigue.  However, although plaintiff testified to needing to lie down frequently, it appears the need was associated with pain as opposed to fatigue.  Plaintiff completed a fatigue questionnaire and her answers were limited to her inability to accomplish tasks due to the pain or her need to rest her body in order to avoid pain, and not due to any disabling fatigue.  See Tr. 170-173.  In addition, plaintiff did not testify about experiencing fatigue.  Since the ALJ evaluated plaintiff's credibility with respect to plaintiff's allegations of pain, he did not err in failing to discuss any purported fatigue.

I agree with plaintiff that the ALJ took out of context Dr. Salisbury's comment about Dr. Sukin's findings regarding plaintiff's level of disability.  The ALJ reported that Dr. Salisbury noted that in his "reading of the orthopedist's evaluation, it is not clear that she is obviously

going to be found disabled." Tr. 354. Instead, Dr. Salisbury stated, "[Plaintiff] is hoping to get

on disability and then have some of these things paid for but in my reading of the orthopedist's

evaluation, it is not clear that she is obviously going to be found disabled." Tr. 296. It is unclear

to me how this reflects on plaintiff's credibility. Contrary to the Commissioner's reading of the

comment, Dr. Salisbury did not opine himself that plaintiff would not be found disabled.

I think the ALJ also overemphasized the disconnection between plaintiff's continued

reports of low back pain and the results of the lumbosacral MRI since fibromyalgia could

account for plaintiff's pain. The ALJ erred in considering this factor in his credibility analysis.

Nevertheless, after fully and fairly considering all the evidence, I find that the ALJ gave

clear and convincing reasons supported by specific facts in the record in rejecting Barnard's

claimed limitations. The fact that the ALJ improperly considered some reasons for finding

plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is

improper. Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003).

The ALJ's credibility findings and interpretation of the record are supported by substantial

evidence with regard to plaintiff's testimony about her impairments and her inability to work.

IV.    Lay Witness

Plaintiff complains that the ALJ improperly rejected the testimony of plaintiff's husband

and Lavon Sipe, and the written statements of plaintiff's husband and June Winters. The

Commissioner responds that the ALJ properly rejected the lay witness observations as being

inconsistent with the medical record.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must

take into account unless he gives reasons for the rejection that are germane to each witness. A

medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100

F.3d 1462, 1467 (9th Cir. 1996).

The ALJ rejected the husband's testimony in part because he was concerned the husband

has a financial interest in helping his wife gain benefits.  This is not an acceptable reason to

reject lay witness testimony.  Smolen, 80 F.3d at 1288-89.

The ALJ also rejected the statements of the husband and friends because they were

observations of plaintiff's current condition, as opposed to being relevant to her condition at her

date last insured.  The testimony of plaintiff's husband was directed at what plaintiff can

currently do, and accordingly the ALJ gave a germane reason for declining to consider his

testimony.  Similarly, although Lavone Sipe offered testimony in response to the question, "So

have you observed any changes in her health or activity levels from in the last few years?", her

testimony was directed at what plaintiff was unable to do at the time of the hearing, as opposed

to at the time of her date last insured.

However, with regard to the written statements, the ALJ incorrectly reported the contents

of the record.  The husband's written statement was completed one year before the expiration of

plaintiff's date last insured.  Tr. 182.  The other written statement, completed by June Winters on

October 28, 1998, reports, "In the past two years, I've seen her go down hill so fast.  The pain in

her back, neck, and legs has kept her from her daily activities or enjoying life in any form."  Tr.

192.  Therefore, the ALJ's conclusion that these statements "fail[ed] to support the conclusion

that the claimant was functionally unable to perform work-related activities prior to the

expiration of her insured status in March 1998" was flawed.  Tr. 354.

Nevertheless, the ALJ rejected the lay witness testimony because their observations

"remain inconsistent with the objective medical evidence for the relevant time period." Id. Both June Winters' statement and the husband's statement reflect plaintiff's limitations due to pain. However, as assessed at length above, the medical evidence does not support plaintiff's complaints. Dr. Brook opined that it is "difficult to understand how she remains as symptomatic as she does a year following what appears to have been a fairly minor incident. Nevertheless, from a neurological standpoint I could detect no abnormalities suggesting we should pursue a neurological work-up further. She has no weakness, there are no reflex changes and there is no discreet sensory pattern . . . ." Tr. 265. Dr. Corsolini noted her fibromyalgia has "produced or is associated with a condition of dependency or disability in which Mrs. Barnard either cannot or will not do what she is fully capable of." Tr. 273. Finally, Dr. Sukin identified plaintiff's "lack of effort" on the exam. Tr. 285. Furthermore, as pointed out by the Commissioner, plaintiff's arthrogram, MRI, and EMG tests demonstrated minimal or normal findings. While plaintiff suffered from fibromyalgia, neither plaintiff's reports to her physicians nor her physicians' findings support the level of plaintiff's debilitation reported by these two lay witnesses. Accordingly, the ALJ gave germane reasons for rejecting the lay witness testimony.

V.    Residual Functional Capacity

Plaintiff argues that the ALJ's hypothetical functional capacity did not fully encapsulate plaintiff's impairments. Since I have rejected plaintiff's arguments as set forth above, I find that the ALJ's hypothetical question contained all of the relevant limitations.

VI.    Past Relevant Work

Plaintiff contends that the past relevant work identified by the ALJ does not conform to the regulatory definition as it was work that she performed on an intermittent basis and does not

qualify as substantial gainful activity given her gross monthly earnings.  The Commissioner

responds that plaintiff held the jobs for long enough to have learned how to do it, which is the

relevant factor at issue, and takes issue with how plaintiff calculated the monthly earnings.  See

20 C.F.R. § 404.1565(a) (work done within the last 15 years, lasted long enough for you to learn

to do it, and was substantial gainful activity constitutes past relevant work).

        The ALJ found that plaintiff could perform her past relevant work as a floral designer,

dress shop sales clerk, school night watchman/security guard, and general clerk.  Plaintiff

apparently does not take issue with the ALJ's finding that the floral design job constituted past

relevant work–she performed the job for two years and plaintiff does not challenge the wage as

being too little to qualify as substantial gainful activity.  Similarly, plaintiff worked as a dress

shop sales clerk for three years, and again plaintiff does not challenge the wage.

        As for the school night watchman/security guard position, while plaintiff filled the

position for only two to four months, she worked for the same school district as a bus driver for a

period of two and a half years and was moved to the guard position only as a result of her work-

related shoulder injury.  Thus, the concern that plaintiff articulates–the ability to hold a job for

long enough to constitute substantial gainful activity as discussed in Gatliff v. Commissioner of

Soc. Sec. Admin., 172 F.3d 690, 694 (9th Cir. 1999)–is not applicable here.  As for whether her

earnings met the presumption for substantial gainful activity, plaintiff worked three and a half

months as a guard, and made a total of $1,879.07.  Tr. 103, 118, 162.  This amounts to

approximately $501 a month, which exceeds the amount necessary to meet the presumption in

1992.  20 C.F.R. § 404.1574 (b)(2), Table 1.

        Thus, the only remaining position, the general clerk job, which plaintiff performed for

two to three months, and in which she made approximately $379 to $252 a month in 1989 depending on how long she worked there, is the only job that may not qualify as substantial gainful activity.  Nevertheless, because the ALJ identified three jobs that qualify as past relevant work, the ALJ's finding that plaintiff is not disabled is supported by substantial evidence in the record.

**CONCLUSION**

The decision of the Commissioner is affirmed.  Judgment will be entered.

IT IS SO ORDERED.

DATED this __21st  day of March, 2006.


/s/ GARR M.KING_____
GARR M. KING
United States District Judge

Page 25 - OPINION AND ORDER